UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| METROPOLITAN GROUP PROPERTY AND CASUALTY INSURANCE COMPANY, now known as FARMERS GROUP PROPERTY AND CASUALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> AUSTIN FITE, <br><br> Defendant. | CASE NO. 3:20-cv-05697-JHC <br><br> ORDER RE: MOTION FOR SUMMARY JUDGMENT (DKT. # 110) |
| AUSTIN FITE, <br><br>   Consolidated Plaintiff, <br>   v. <br><br> METROPOLITAN GROUP PROPERTY AND CASUALTY INSURANCE COMPANY, now known as FARMERS PROPERTY AND CASUALTY INSURANCE COMPANY and METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, now known as FARMERS PROPERTY AND CASUALTY INSURANCE COMPANY, registered foreign insurers doing business in the State of Washington; and "JOHN AND JANE DOES" 1-10, <br><br>   Consolidated Defendants. | |

ORDER RE: MOTION FOR SUMMARY JUDGMENT
(DKT. # 110) - 1

# I

## INTRODUCTION

This insurance matter comes before the Court on Plaintiff and Consolidated Defendant Metropolitan Group Property and Casualty Insurance Company's second motion for summary judgment. *See* Dkt. # 110. Defendant and Consolidated Plaintiff Austin Fite (Austin) claims to be an insured under an automobile insurance policy issued to his father Brian Fite and stepmother Tina Fite (Brian and Tina) by Metropolitan.[1] *See* Dkt. # 114 at 2. According to Austin, Metropolitan has failed to "promptly and reasonably [pay] the benefits available to [him] under the terms of his parents' automobile insurance policy[.]" *Id.* Metropolitan seeks summary judgment, requesting that the Court: (1) declare that it does not owe any uninsured motorist (UIM) coverage to Austin; (2) dismiss the contractual and extracontractual claims by Austin against Metropolitan; (3) and limit Austin's personal injury protection (PIP) recovery, if any, under its policy. Dkt. # 110 at 2–3. For the following reasons, the Court GRANTS in part and DENIES in part the motion.

# II

## BACKGROUND

On July 9, 2014, Austin, at the age of 18, was struck by a vehicle driven by Lee Mudd. *See* Dkt. # 41 at 4; *Fite v. Mudd*, 19 Wash. App. 2d 917, 921, 498 P.3d 538 (2021). Austin was hospitalized for serious injuries, which included a femur fracture, fractured bones in his face and head, traumatic brain injury, and detached retinas. Dkt. # 41 at 4. In January 2015, Brian and Tina notified Metropolitan of the collision and the insurer opened an investigation. Dkt. # 38-8 at 2; *see* Dkt. # 38-10. On February 5, 2015, Metropolitan preliminarily concluded that it was

---

[1] Metropolitan Group Property & Casualty Company Policy Number 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-0. *See* Dkt. # 38-7.

ORDER RE: MOTION FOR SUMMARY JUDGMENT
(DKT. # 110) - 2

unlikely that its policy covered Austin because he was not named in the policy declarations and did not reside in the named insureds' household at the time of the accident; Metropolitan sought to take examinations under oath of Brian, Tina, and Austin on February 24, 2015. *See* Dkt. # 38-10 at 4–5. Counsel for Brian, Tina, and Austin declined the examination request, stating that Brian and Tina were unavailable on the proposed date and Austin was undergoing treatment for his collision-related injuries; counsel also shared that Austin would not likely be able participate in any future examinations due to his traumatic brain injury. Dkt. # 38-11 at 2–3. Between 2014 and 2015, Austin underwent multiple eye surgeries. Dkt. # 41 at 4.

In 2017, Austin filed a negligence suit against Mudd and the City of Puyallup; the jury awarded Austin $6.5 million, but the Washington Court of Appeals reversed the liability determination. *See Fite*, 19 Wash. App. 2d at 921–22; Dkt. # 39-7 at 2. While the state court appeal was pending, Metropolitan filed this declaratory judgment action and Austin later sued Metropolitan, claiming that the insurer had engaged in bad faith and harmed Austin when it failed to provide timely coverage. *See* Dkt. # 113; *see Fite v. Metro. Grp. Prop. and Cas. Ins., et al.*, Case No. 3:20-cv-05819-BHS (consolidated with this case on November 10, 2021, at Dkt. # 15). Austin brings six causes of action: (1) negligence; (2) breach of contract; (3) violation of the Washington Insurance Fair Conduct Act (IFCA); (4) violation of the Washington Consumer Protection Act (CPA); (5) breach of the duty of good faith; and (6) breach of fiduciary duties. *See* Case No. 3:20-cv-05819-BHS, Dkt. # 9-6 at 12–19 (amended complaint).

On June 2, 2022, Metropolitan moved for summary judgment for the first time, claiming that: (1) it did not owe UIM or PIP coverage to Austin because he was not an insured when he was injured; and (2) Austin's extracontractual claims should be dismissed because he was not entitled to coverage and the investigation and denial of his claim were reasonable. *See generally* Dkt. # 37. The Court denied the motion, determining that: (1) there was a question of fact as to

whether Austin was a resident of the Brian and Tina's household at the time of the accident and therefore qualified as an insured; and (2) summary judgment was inappropriate for Austin's extra-contractual claims because of the fact question of the reasonableness of Metropolitan's actions in investigating and ultimately denying coverage. Dkt. # 56 at 5. On December 21, 2022, the Court stayed this case pending resolution of the state court personal injury action. *See* Dkt. # 102.

The state court case was tried again to resolve the issue of liability remanded on appeal, and on August 29, 2023, the jury found that Mudd and the City of Puyallup were jointly and severally liable for damages of about $6.5 million, with a total judgment amount of $7,929,294.51, which included accrued post-judgment and post-verdict interest. *See* Dkt. # 105 at 4–6, 8–11. The City of Puyallup fully satisfied the judgment. *Id.* at 13–14. On December 27, 2023, the Court lifted the stay. Dkt. # 108. Metropolitan filed its second motion for summary judgment. Dkt. # 110. Austin then filed his opposition to the motion.[2]

### III
#### DISCUSSION

A.    Summary Judgment Standards

Summary judgment is appropriate if the evidence viewed in the light most favorable to the non-moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far*

---

[2] In his briefing, Austin clarifies that he does not oppose dismissal of claims related to Consolidated Defendant Metropolitan Property and Casualty Insurance Company's excess (umbrella) coverage. Dkt. # 114 at 17.

*Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248–49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the lack of such a dispute in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When there are no material facts in dispute, the interpretation of insurance policy is a matter of law and appropriately decided on summary judgment. *See Allstate Ins. Co. v. Peasley*, 131 Wash. 2d 420, 423–24, 932 P. 2d 1244 (1997); *see, e.g.*, *Am. Bankers Ins. v. N.W. Nat. Ins.*, 198 F.3d 1332 (11th Cir.1999).

B.   Washington Law on Insurance Policy Interpretation

In cases based on diversity jurisdiction, such as this one, Washington law governs. *See Ins. Co. of N. Am. v. Fed. Exp. Corp.*, 189 F.3d 914 (9th Cir. 1999); *Anderson v. State Farm Mut. Auto. Ins. Co.*, No. C06-1112RSM, 2007 WL 1577870 (W.D. Wash. May 30, 2007).

"The insurance contract must be viewed in its entirety; a phrase cannot be interpreted in isolation." *Peasley*, 131 Wash. 2d at 423–24. "Insurance contracts should be interpreted as an average insurance purchaser would understand them[.]" *Diamaco, Inc. v. Aetna Cas. & Sur. Co.*, 97 Wash. App. 335, 338, 983 P. 2d 707 (1999), *as amended* (Oct. 12, 1999) (quoting *Daley v. Allstate Ins. Co.*, 135 Wash. 2d 777, 784, 958 P. 2d 990 (1998)). Courts must apply "a practical

ORDER RE: MOTION FOR SUMMARY JUDGMENT
(DKT. # 110) - 5

and reasonable rather than a literal interpretation[,]" without applying a "strained or forced construction which would lead to an extension or restriction of the policy beyond what is fairly within its terms, or which would lead to an absurd conclusion, or render the policy nonsensical or ineffective." *Morgan v. Prudential Ins. Co. of Am.*, 86 Wash. 2d 432, 434–35, 545 P. 2d 1193 (1976). "If the policy language on its face is fairly susceptible to two different and reasonable interpretations, then ambiguity exists, and the court must apply the interpretation most favorable to the insured." *United Specialty Ins. Co. v. Shot Shakers, Inc.*, No. C18-0596JLR, 2019 WL 199645, at * 8 (W.D. Wash. Jan. 15, 2019) (citing *Peasley*, 131 Wash. 2d at 422–26).

C.   The UIM Insurance Provision

The Metropolitan policy states in pertinent part:

**DUPLICATE PAYMENTS**

No one may receive duplicate payment for the same element of loss under this coverage and:

1. all sums paid by or on behalf of any liable parties.

2. all sums paid or payable under the **AUTOMOBILE LIABILITY** section of this policy.

Dkt. # 38-7 at 49.

D.   Metropolitan's Motion for Summary Judgment

1.   UIM Coverage

Metropolitan contends that because the City of Puyallup and Mudd have satisfied the $7,929,294.51 judgment, including interest and costs, *see* Dkt. # 105 at 8–13, the insurer does not owe Austin any UIM benefits because that would result in a "double recovery." Dkt. # 110

at 9.[3] Metropolitan says that *Krantz v. Allstate Property & Casualty Insurance Company* should instruct the Court's analysis. No. C12-5848 RBL, 2014 WL 2558679 (W.D. Wash. June 6, 2014), *aff'd in part, vacated in part on other grounds sub nom. Krantz on behalf of K.K. v. Allstate Prop. & Cas. Ins. Co.*, 683 Fed. App'x. 586 (9th Cir. 2017).

*Krantz* arose out of a car collision that injured plaintiff K.K and others. The accident was caused by an underage, intoxicated driver, Adam Pena, and Dean Wenner, the person who provided alcohol to Pena. *Krantz*, 2014 WL 2558679, at *1. After K.K. and the other injured parties filed suit against Pena and Wenner, a global settlement was reached between the plaintiffs, the two tortfeasors, and the insurers. *Id.* The settlement exhausted the combined limits of Pena's and Wenner's liability policies, and K.K. received $65,000 from the combined fund, with Wenner's insurer issuing the actual check. *Id.* K.K.'s insurer, Allstate, also paid him an additional $10,000 for medical coverage under his PIP coverage. *Id.* K.K. then sued Allstate, claiming that he had not been fully compensated under his UIM benefits. *Id.* A jury later determined that K.K. had suffered $81,708.32 in damages. *Id.* Allstate asked the *Krantz* court to set-off the total damage amount of $65,000 that Krantz had already received from the $81,708.32 judgment. The district court agreed, saying that Krantz was seeking double recovery and that Allstate was "entitled to deduct the amount of the settlement [] from the jury's total damage award under its policy and under the UIM statute." *Id.* at *2.

The Ninth Circuit affirmed, concluding that "Washington courts have frequently held that UIM insurance should not permit insured parties to recover more than their total damages . . . and the interpretation that Krantz advances would allow K.K. to do so." *Krantz on behalf of*

---

[3] Metropolitan does not concede that Austin is an insured under the policy, but states that even assuming that Austin is an insured, he is still not eligible for UIM benefits because he "does not have any uncompensated damages." *See* Dkt. # 110 at 9.

ORDER RE: MOTION FOR SUMMARY JUDGMENT
(DKT. # 110) - 7

*K.K.,* 683 F. App'x at 588 (citing *Elovich v. Nationwide Ins. Co.*, 104 Wash. 2d 543, 550, 707 P.2d 1319 (1985)).

Metropolitan contends that the *Krantz* outcome adheres to Washington UIM law and should be applied here, particularly when considering the similarities between the Allstate UIM policy language and its own policy language.  Dkt. # 110 at 11 (comparing the Allstate language, "[T]he total damages an insured person is legally entitled to recover will be reduced by . . . ***all amounts paid by the owner of an underinsured motor vehicle or any else responsible***" with Metropolitan's language "No one may receive duplicate payment for the same element of loss under this coverage and . . . ***all sums paid by or on behalf of any liable parties.***") (emphasis in briefing); *see* Dkt. # 38-7 at 47.  Metropolitan concludes that because Austin has already been fully compensated for his jury awarded damages by the City of Puyallup and Mudd, as in *Krantz*, he may not recover an additional $500,000.  Dkt. # 110 at 12.

Austin responds that the "Duplicate Payments" section of Metropolitan's policy is ambiguous, stating that its language, "all sums paid by or on behalf of any liable parties[,]" is "clearly ambiguous and should be limited only to other payments made vis-à-vis insurance and not other kinds of compensation[,]" because of the "Duplicate Payments" section's proximity to the policy's subsequent "Other Insurance" section.  Dkt. # 114 at 9 (citing *Kaiser Found. Health Plan, Inc. v. Maylone*, 23 Wash. App. 2d 1017, 2022 WL 3754902 (2022) (health insurer Kaiser had a right to reimbursement from insured's UIM proceeds)). [4]  Austin claims that therefore "it would be unreasonable and violative of the UIM statute [and public policy] to construe the 'duplicate payment' clause to include non-insurance recoveries inclusive of the essentially $4 million cash paid by the City of Puyallup."  Dkt. # 114 at 9–10.  Austin suggests that he is not

---

[4] This is an unpublished and inapposite case, which the Court declines to address.

seeking double recovery because "the City of Puyallup was self-insured up to $4 million in this case[,]" making the first four million paid to Austin "essentially a cash payment" and not a payment from "other insurance." *Id.* at 9.

The Court disagrees with Austin for two reasons. First, courts interpreting an insurance policy give the language its plain meaning, construing the policy as would an "average" person purchasing insurance. *Woo v. Fireman's Fund Ins. Co.*, 161 Wash. 2d 43, 52, 164 P.3d 454 (2007). A clause in an insurance policy is ambiguous if it is "fairly susceptible to two different interpretations, both of which are reasonable." *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wash. 2d 165, 171, 110 P.3d 733 (2005). The plain language of the policy at issue is not ambiguous and Austin's interpretation of the "Duplicate Payments" section strays from the clear terms of the policy and into the impermissible territory of "absurd" conclusions that could render the policy "nonsensical." *See Morgan*, 86 Wash. 2d at 434–35. The section's terms are not fairly susceptible to Austin's proposed interpretation; the Court will not interpret the term "all sums" to mean "all insurance proceeds." The Court therefore declines to adopt Austin's position, concluding that an average person purchasing insurance would construe the terms of the "Duplicate Payments" section ("all sums paid by or on behalf of any liable parties") to include any payments, including those made by tortfeasors—paid in cash or otherwise—to satisfy a judgment.

Second, Austin's arguments on the public policy implications of the "Duplicate Payments" section are unavailing. While the Court agrees that the UIM statute protects victims of automobile collisions from underinsured or uninsured drivers, *see* Dkt. # 114 at 7, Austin is now not one of those individuals because he has collected all the damages awarded to him. Austin fails to point to any pertinent public policy, statute, or other legal authority that would be violated if the Court enforces the insurance provision as written.

ORDER RE: MOTION FOR SUMMARY JUDGMENT
(DKT. # 110) - 9

Citing no legal authority, Austin also contends that he "did not fully recover all amounts due and owing from underinsured motorist Lee Mudd because the City of Puyallup was only required to pay at a lower rate of interest as evidenced by the judgment in this case." Dkt. # 114 at 10; *see* Dkt. # 111-1 at 2–3 (post-judgment interest for Mudd was 7% and post-judgment interest for the City of Puyallup was 3.733%). Austin says that, had the city's interest accrued at the same rate as Mudd's, "it would have resulted in at least double the $317,868.20" assigned to the city. Dkt. # 114 at 10. Austin asserts that the statutorily mandated interest rates assigned to the tortfeasors rendered the interest portion of the judgment to be "several only" despite the jury's joint and several liability determination. *See* RCW 4.56.110(3)(a), (b).

Although Austin appears to oppose the way post-judgment interest rates are applied to public agencies (the city) versus underinsured motorists (Mudd), he does not bring either an as applied or facial challenge to the RCW 4.56.110 or provide any legal authority to support his position. Dkt. # 114 at 10 (absence); *see* RCW 4.56.110(3)(a), (b). Whether Austin *would have* received more in post-judgment interest had Mudd paid a higher portion of the judgment is ultimately irrelevant to the Court's determination, and the Court is unaware of any legal authority to support his theory.

Lastly, Austin says that, if the Court does not invalidate the "Duplicate Payments" section, "Metropolitan's contract of insurance does not permit it to do what it did here and unreasonably deny payment to Mr. Fite for 9 years, only to take advantage of which ultimately was able to recover from other parties." Dkt. # 114 at 11. Austin contends that, in alignment with the UIM statute's public policy, "Metropolitan should have timely paid Mr. Fite his UIM and PIP benefits and thereafter sought recovery/repayment from the 2023 judgment proceeds, if applicable." *Id.* Austin concludes that Metropolitan's "failure to promptly pay denied Austin his use of $500,000 for a period in excess of 9 years." *Id.* at 12–13. Austin provides no legal

ORDER RE: MOTION FOR SUMMARY JUDGMENT
(DKT. # 110) - 10

authority to support his assertion. And while such an argument may be pertinent to Austin's other claims against Metropolitan, it is inapt in the context of seeking UIM benefits.

The Court therefore determines that, for these reasons, the reasons outlined in *Krantz*, and because Austin has been fully compensated for his injuries from the accident, he may not recover UIM benefits on top of his recovery on the judgment. *See* 2014 WL 2558679, at *1; *Krantz on behalf of K.K.*, 683 F. App'x at 588 (citing *Elovich*, 104 Wash. 2d at 550); *Luckett v. State Farm Mut. Auto. Ins. Co.*, 848 F. App'x 262, 263 (9th Cir. 2021) ("The district court correctly determined that Luckett was not entitled to UIM benefits under his policy because he had already received all that he was 'legally entitled to recover' through settlement. *See* Wash. Rev. Code § 48.22.030(1). The purpose of UIM coverage is to 'place the insured in the same position as if the tortfeasor carried [adequate] liability insurance.'"); *Petersen-Gonzales v. Garcia*, 120 Wash. App. 624, 634, 86 P.3d 210, 215 (2004) ("UIM insurance provides an excess layer of coverage that is designed to provide full compensation for all amounts *that a claimant is legally entitled to* where the tortfeasor is underinsured.") (emphasis in original) (citation omitted).

2.  Austin's Extracontractual Claims

Metropolitan seeks the dismissal of Austin's extracontractual claims. Dkt. # 110 at 13–14. Austin brings five extracontractual causes of action that sound in tort: (1) negligence; (2) breach of the duty of good faith; (3) breach of fiduciary or quasi-fiduciary duty; (4) violation of the CPA; and (5) violation of IFCA. *See* Case No. 3:20-cv-05819-BHS, Dkt. # 9-6 at 12–19. Metropolitan offers three arguments why the Court should dismiss. Dkt. # 110 at 13–19.[5]

---

[5] Metropolitan also seeks dismissal of Austin's *contractual* claim, *see* Dkt. # 110 at 2–3, but does not provide any argument to support its request. The Court therefore declines to address the issue. *See* Case No. 3:20-cv-05819-BHS, Dkt. # 9-6 at 12; *cf. Christian Legal Soc. Chapter of Univ. of California v. Wu*, 626 F.3d 483, 487 (9th Cir. 2010) (Courts regularly "refuse[] to address claims that were only 'argue[d] in passing'" or that were "bare assertion[s] with no supporting argument") (citations omitted).

ORDER RE: MOTION FOR SUMMARY JUDGMENT
(DKT. # 110) - 11

Metropolitan's first two arguments for dismissal are that Austin does not provide sufficient facts to establish the elements of substantive and procedural liability in its bad-faith claim. Metropolitan first says that Austin has not established a substantive bad-faith claim. *Id.* at 14–15. The insurer says it has

> no obligation to pay UIM benefits because Austin cannot meet his burden to show that he has not been fully compensated by tortfeasors' payments. Since there is no obligation, Metropolitan's declination to pay is legally correct, and since it is legally correct, as a matter of law it cannot be unreasonable.

*Id.* at 15 (citing *United Services Auto. Ass'n v. Speed,* 179 Wash. App. 184, 202–203, 317 P.3d 532 (2014); *Wright v. Safeco Ins. Co. of Am.,* 124 Wash. App. 263, 279–80, 109 P.3d 1 (2004)).

Metropolitan next says that Austin may not recover any extracontractual liability damages on the basis of procedural bad faith because he has not identified any *Coventry Associates* damages. *See Coventry Assocs. v. Am. States Ins. Co.,* 136 Wash. 2d 269, 961 P.2d 933 (1998). Metropolitan says that "[t]o date, Austin has not identified any 'procedural' bad faith, negligence[,] or CPA damages, and so this extracontractual claim—if it is even asserted here—must also be dismissed." Dkt. # 110 at 17 (citing *Celotex,* 477 U.S. at 323).

Austin responds that there is "simply no question that [he] has grievously suffered due to Metropolitan's" failure to pay insurance benefits. Dkt. # 114 at 14. Austin states that "at a minimum" there is a question of fact as to his entitlement to these benefits and a question as to whether Metropolitan's failure to provide these benefits "was unreasonable and violative of applicable regulatory claims handling standards." *Id.* Austin provides a supplemental declaration that he has suffered certain harm because of Metropolitan's failure to provide insurance benefits. Dkt. # 112; *see* Dkt. # 41.

Austin also states that there is a question of fact as to whether Metropolitan's "failure was unreasonable and violative of applicable of applicable regulatory claims handling standard."

ORDER RE: MOTION FOR SUMMARY JUDGMENT
(DKT. # 110) - 12

Dkt. # 114 at 14.  Austin provides a supplemental declaration from Gary Williams, an insurance claims expert, to support Austin's claim that he is entitled to damages because of Metropolitan's alleged unreasonable behavior.  Dkt. # 113; *see* Dkt. # 40.[6]

Metropolitan's third argument relates to whether it owes Austin extracontractual damages under its PIP coverage, Metropolitan asserts that any recovery under this provision is precluded because

> Austin has not disclosed any contractual or extracontractual damages from not having the $10,000 in PIP.  Indeed, it is hard to imagine that he would have suffered any harm at all from not having PIP, since his medical bills were covered by the Fites' medical insurance. . . .  Under *Celotex,* this portion of his case must be dismissed because Austin's complete failure of proof on damages is fatal to his claims. . . .  In addition, the court should declare that the most Austin can recover on account of the PIP claim (if coverage exists) is an award of fees and costs pursuant to Washington law.

Dkt. # 110 at 18.

Austin responds that Metropolitan concedes that, at minimum, he "would have been entitled to payment of costs and attorney's fees for his counsel's effort" under the applicable PIP efforts.  Dkt. # 114 at 16.  Austin says that had Metropolitan provided him with PIP benefits, those funds "would have provided him with the benefit of insurance coverage and ameliorated his rather dire economic conditions during the long pendency of the underlying third-party lawsuit."  *Id.*

       a.    Substantive extracontractual liability

As for its position on the issue of substantive extracontractual liability, Metropolitan suggests that because it denied coverage to Austin for about nine years—based on the dispute

---

[6] In its reply, Metropolitan contends that the Court should not consider the Williams declaration, moving to strike it from the record because it is based on impermissible conclusions of law.  *See* Dkt. # 113; Dkt. # 115 at 9–11.  Because the Court does not rely on the substance of this declaration, it declines to address this issue.

ORDER RE: MOTION FOR SUMMARY JUDGMENT
(DKT. # 110) - 13

over whether Austin was a resident of the Fite household and an insured—and he has now been fully compensated by the two tortfeasors in a third-party liability lawsuit, Metropolitan's denial of payment was legally correct and therefore cannot be substantively unreasonable. Dkt. # 110 at 14–15 ("An insurer's coverage decision is not actionable if it is merely incorrect; it must be ***unreasonably*** incorrect in order to be in bad faith, or violate the CPA or IFCA.") (emphasis in original). The Court notes, however, that whether Metropolitan was reasonable in handling Austin's claim, either in its investigation or in declining to pay benefits, has not been decided; the Court previously stated that this is a question of fact whether Austin is an insured under the policy. *See* Dkt. # 56 at 3–4. Were courts to adopt Metropolitan's proffered theory, they would create perverse incentives for insurance companies to drag their feet on claims investigations and delay long enough for a third-party payment to relieve insurers of their duty to pay corresponding insurance benefits. The Court thus declines to follow Metropolitan's reasoning.[7]

        b.    *Coventry* Damages: Breach of duty of good faith, negligence, and IFCA claims

Metropolitan seeks dismissal of the claims for breach of duty of good faith, negligence, and IFCA violation, challenging Austin's showing of damages.

"An action for bad faith handling of an insurance claim sounds in tort." *Safeco Ins. Co. of Am. v. Butler,* 118 Wash. 2d 383, 389, 823 P.2d 499 (1992). Claims of an insurer's bad faith are analyzed by applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by that breach. *See Mut. of Enumclaw Ins. Co. v. Dan Paulson*

---

[7] The Court also notes that the cases cited by Metropolitan do not appear to apply to the facts here or the arguments presented in the briefing. Dkt. # 110 at 15; *see, e.g., Kirk v. Mt. Airy Ins. Co.,* 134 Wash. 2d 558, 563–64, 951 P.2d 1124 (1998) (discussing a rebuttable presumption of harm for an insurer's bad-faith breach of contract and the remedy of coverage by estoppel); *Speed*, 179 Wash. App. 184 at 202–03 (holding that when an insurer correctly denies a duty to defend, there can be no bad-faith claim based on that denial).

ORDER RE: MOTION FOR SUMMARY JUDGMENT
(DKT. # 110) - 14

*Constr., Inc.,* 161 Wash. 2d 903, 916, 169 P.3d 1 (2007) (quoting *Smith v. Safeco Ins. Co.,* 150 Wash. 2d 478, 485, 78 P.3d 1274 (2003)). Emotional distress damages are recoverable under a claim of bad faith. *Singh v. Zurich Am. Ins. Co.*, 5 Wash. App. 2d 739, 760, 428 P.3d 1237 (2018) (affirming the award of emotional distress damages and discussing the various cases that confirm that such damages are cognizable in insurance bad-faith claims).[8]

Metropolitan contends that under *Coventry Associates* only consequential economic damages are available under a bad-faith claim. 136 Wash. 2d 269. There, the Supreme Court of Washington determined that—when considering procedural extracontractual claims of bad faith and CPA violations—"an insurer is not liable for the policy benefits but, instead, liable for the consequential damages to the insured as a result of the insurer's breach of its contractual and statutory obligations." *Coventry Assocs.*, 136 Wash. 2d at 284. Because the record demonstrated that the insured "was required to go through some financial expense as a result of the bad faith investigation conducted by American States" and these "expenses include the cost of hiring their own experts and investigators to determine if [the insurer] should have covered the claim[,]" the insured was "entitled to make a claim for those amounts and damages normally

---

[8] Austin also brings breach of good-faith duty and breach of quasi-fiduciary duty claims. Case No. 3:20-cv-05819-BHS, Dkt. # 9-6 at 13. Claims against insurers for both breach of fiduciary duty and breach of duty of good faith are duplicative. Under Washington law, insurers do not owe a true fiduciary duty to their insureds, but instead have a "quasi-fiduciary" relationship with them. *E.g.*, *Sadler v. State Farm Mut. Auto. Ins. Co.*, No. C07-995Z, 2008 WL 4371661, at *12 (W.D. Wash. Sept. 22, 2008), *aff'd*, 351 F. App'x 234 (9th Cir. 2009) ("In response to State Farm's motion for summary judgment, plaintiffs have provided no analysis concerning how their breach of fiduciary duty claim differs from their bad faith claim, and the Court therefore treats the two causes of action as redundant, with both proceeding under the theory that State Farm did not deal fairly with plaintiffs and/or give equal consideration to plaintiffs' interests. Pursuant to that rationale, plaintiffs' claim fails as a matter of law."); *see O'Malley v. Grp. Health Co-op. of Puget Sound*, 109 Wash. App. 1026 (2001) ("An insurer's fiduciary duty is the equivalent of its duty to act in good faith."); *but see Baker v. Phoenix Ins. Co.*, No. C12-1788JLR, 2014 WL 241882, at *3 (W.D. Wash. Jan. 22, 2014) ("The court dismisses Mr. Baker's claim for breach of fiduciary duty. Washington courts have yet to recognize a claim for breach of fiduciary duty by an insured against an insurer."). For these reasons, the Court dismisses Austin's claims of breach of fiduciary duty or quasi-fiduciary duty.

associated with bad faith[.]" *Id.* The court held that the insured's damage were limited "to the amounts it has incurred as a result of the [insurer's] bad faith investigation, as well as general tort damages." *Id.* at 285.

The Court disagrees with Metropolitan's interpretation of *Coventry Associates*, observing that the Washington Supreme Court recognized that bad-faith claims included general tort damages. *Coventry Assocs.*, 136 Wash. 2d at 285. An insured's damages

> may include as an additional component the damages caused *to him* by the insurer's bad faith. Examples include the potential effect on the insured's credit rating, damage to reputation, loss of business opportunities, and loss of control of the case. Other examples are loss of interest, attorney fees and costs, financial penalties for delayed payments, and emotional distress, anxiety, and fear. Because bad faith is a tort, an insured is not limited to economic damages.

*Miller v. Kenny*, 180 Wash. App. 772, 802, 325 P.3d 278 (2014) (citing *Butler,* 118 Wash. 2d at 399, 392; *Anderson,* 101 Wash. App. 323, 333, 2 P.3d 1029 (2000); *Coventry Assocs.,* 136 Wash. 2d at 284–85); *Beasley v. GEICO Gen. Ins. Co.*, 23 Wash. App. 2d 641, 661, 517 P.3d 500 (2022), *rev. denied*, 200 Wash. 2d 1028, 523 P.3d 1188 (2023) ("Tort claims for the breach of the duty of good faith, also known as insurance bad faith claims, allow for recovery of expenses; consequential damages; and 'general tort damages,' including noneconomic damages such as emotional distress caused by the breach of the duty of good faith.").

A negligence claim has four elements: (1) the existence of a duty owed; (2) breach of that duty; (3) proximate cause between the breach and resulting injury; and (4) legally compensable damages. *See, e.g.*, *Behla v. R.J. Jung, LLC*, 11 Wash. App. 2d 329, 334, 453 P.3d 729 (2019); *see also First State Ins. Co. v. Kemper Nat. Ins. Co.*, 94 Wash. App. 602, 612–13, 971 P.2d 953 (1999) ("First State was entitled to instructions on negligence as well as bad faith because they are two separate and distinct causes of action. . . . Where courts have adopted standards of good/bad faith and ordinary care, as we have in Washington, the plaintiff is entitled to a jury

ORDER RE: MOTION FOR SUMMARY JUDGMENT
(DKT. # 110) - 16

verdict on theories of either negligence or bad faith, *independent of each other* because a party may fail to use ordinary care yet still not act in bad faith."). In negligence cases, Washington courts "allow claims for emotional distress in the absence of physical injury only where emotional distress is (1) within the scope of foreseeable harm of the negligent conduct, (2) a reasonable reaction given the circumstances, and (3) manifest by objective symptomatology." *Bylsma v. Burger King Corp.*, 176 Wash. 2d 555, 560, 293 P.3d 1168 (2013) (citing *Hunsley v. Giard,* 87 Wash. 2d 424, 433, 436, 553 P.2d 1096 (1976)).

IFCA provides a remedy for insureds when insurers unreasonably deny a coverage claim or benefit payment. See RCW 48.30.015(1). If an insurer unreasonably denies a benefit payment or violates any regulation listed in RCW 48.30.015(5), courts may award damages. RCW 48.30.015(2), (5). Noneconomic damages, such as emotional distress damages, are available under IFCA. *See Beasley*, 23 Wash. App. 2d at 666 ("[W]e hold that because the term "actual damages" as used in IFCA is ambiguous and . . . the legislative history of IFCA demonstrates that the act was intended to protect insureds and provide additional remedies, 'actual damages' includes noneconomic damages and the trial court erred by refusing to so instruct the jury.").

Here, Austin has shown a genuine fact dispute as to the emotional distress damages caused from Metropolitan's failure to pay him UIM benefits. In his supplemental declaration, Fite states that the lack of insurance benefits left him in "near destitute circumstances" because his physical injuries and serious brain trauma impeded his ability to work, drive, and enjoy life. Dkt. # 112 at 3. He says that—had Metropolitan satisfied his coverage benefits-—he "would have been substantially better, particularly during the acute phase of [his] accident-related recovery." *Id.* at 4. Without such funds, Austin asserts that he was "essentially destitute, depressed and living a sparse existence." *Id.* He states that "[h]ad such benefits been available

to [him], particularly during [his] acute days of recovery, it would have made a world of difference in my life and would have afforded [him] an opportunity to lead a better life than the fairly squalid one that I had been living[.]" *Id.* Considering the briefing and supplemental declaration, the Court concludes that Austin has established an issue of fact as to his breach of duty of good faith, negligence, and IFCA claims.

c.  CPA claim

The CPA makes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful. RCW 19.86.020. To prevail on a CPA claim, "a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780, 719 P.2d 531 (1986). A CPA claim, for example, can be based on a violation of WAC 284–30–330, which defines unfair claims settlement practices. *See Kallevig*, 114 Wash. 2d 907, 923, 792 P.2d 520 ("A violation of WAC 284–30–330 constitutes a violation of RCW 48.30.010(1), which in turn constitutes a per se unfair trade practice by virtue of the legislative declaration in RCW 19.86.170."); *Perez-Crisantos v. State Farm Fire & Cas. Co.,* 187 Wash. 2d 669, 685, 389 P.3d 476 (2017).

The CPA allows a plaintiff to "recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee." RCW 19.86.090; *Peoples v. United Servs. Auto. Ass'n*, 194 Wash. 2d 771, 781, 452 P.3d 1218 (2019) (actual damages under the CPA may be out-of-pocket medical expenses that should have been covered). Yet "[c]ompensable injuries under the CPA are limited to 'injury to [the] plaintiff in his or her business or property.'" *Frias*, 181 Wash. 2d at 430.

ORDER RE: MOTION FOR SUMMARY JUDGMENT
(DKT. # 110) - 18

> The CPA's requirement that injury be to business or property excludes personal injury, "mental distress, embarrassment, and inconvenience." *Panag v. Farmers Ins. Co. of Wash.,* 166 Wash. 2d 27, 57, 204 P.3d 885 (2009). The financial consequences of such personal injuries are also excluded. *Ambach v. French,* 167 Wash. 2d 167, 178, 216 P.3d 405 (2009). Otherwise, however, the business and property injuries compensable under the CPA are relatively expansive.

*Frias v. Asset Foreclosure Servs., Inc.*, 181 Wash. 2d 412, 431, 334 P.3d 529 (2014); *see also Kovarik v. State Farm Mut. Auto. Ins. Co.*, No. C15-1058-TSZ, 2016 WL 4555465, at *3 (W.D. Wash. Aug. 31, 2016) ("A plaintiff 'cannot prove an injury to her business or property by solely alleging that Allstate should have paid her medical bills, because those injuries are derivative of her personal injuries. Personal injuries are not compensable damages under the CPA and do not constitute an injury to business or property.'").

Austin's declaration does not state that he suffered any additional economic damages caused by Metropolitan's delay in payment. Although Austin says that he has suffered significant mental distress because of Metropolitan's failure to promptly pay benefits, this is not a cognizable injury under the CPA.

## IV

### CONCLUSION

Based on the above, the Court ORDERS the following:

1. The Court GRANTS in part and DENIES in part the motion. *See* Dkt. # 110.

2. The Court DECLARES that, because Austin has been compensated in full for his injuries, Metropolitan does not owe Austin any UIM benefits. The claim for UIM benefits is DISMISSED with prejudice.

3. As for Austin's claims for breach of good-faith duty, negligence, and IFCA violation, the Court DENIES Metropolitan's motion.

ORDER RE: MOTION FOR SUMMARY JUDGMENT
(DKT. # 110) - 19

4. As for Austin's claims of breach of fiduciary or quasi-fiduciary duty and CPA violation, the Court GRANTS Metropolitan's motion. These claims are DISMISSED with prejudice.

5. As for Austin's breach of contract claim, the Court DENIES Metropolitan's motion to dismiss. The Court notes that this claim may suffer from a lack of compensable damages, but Metropolitan did not move to dismiss on this ground.

6. The Court DECLARES that if Austin proves entitlement to PIP coverage and payment of those benefits, he is limited to attorney fees and litigation costs available under Washington law. [9]

7. The Court DECLARES that Consolidated Defendant Metropolitan Property and Casualty Insurance Company (Metropolitan P&C) has no UIM or PIP obligations to Austin under its excess (umbrella) policy. The claims against Metropolitan P&C are DISMISSED with prejudice.

8. As for Metropolitan's motion to strike the Williams Declaration, *see* Dkt. # 113, the Court DENIES the motion without prejudice.

Dated this 27th day of June, 2024.

John H. Chun
United States District Judge

---

[9] Metropolitan seeks to limit "any recovery Austin could have against [it] under the PIP coverage[,]" and asks the Court to declare "that the most Austin can recover on account of the PIP claim . . . is an award of fees and costs pursuant to Washington law." Dkt. # 110 at 18. Austin does not really substantively respond to this claim, nor does he show that he suffered any harm from not having access to his PIP benefits. Dkt. # 112 (alleging emotional distress because of Metropolitan's refusal to provide him with UIM benefits). For these reasons, and those stated in Metropolitan's briefing, *see* Dkt. # 114 at 16, the Court agrees that Austin's recovery under his PIP coverage should be limited to an award of attorney fees and costs under Washington law.

ORDER RE: MOTION FOR SUMMARY JUDGMENT
(DKT. # 110) - 20